Good morning. My name is Carlos Ramirez. I'm the attorney for the Petitioner. May I please the Court? I would like to reserve at least two minutes in rebuttal if necessary. I'm sorry. You're going to have to speak up and into the microphone. Yes, Your Honor. I'd like to reserve two minutes in rebuttal. I would like to take this opportunity to challenge the manner in which Customs and Border Patrol Officer Mr. Rivera prepared Forms I-212 and GI-166 belonging to the Petitioner, which were later used by the immigration judge to find her removable under Section 237A-1, large E, small I, which basically refers to alien smuggling. As noted in our opening brief, Officer Rivera did not provide a formal response to the Petitioner's advisals under Section 287.3, small c, prior to interrogating her at the field office. And in fact, during his own testimony in court, Officer admitted not giving the Petitioner any kind of advisals, whether before or after she was placed in removal proceedings. And those specifically are the reason for her refusal to give the Petitioner any kind of advisals. I would like to take this opportunity to challenge the manner in which Customs and Border Patrol Officer Mr. Rivera prepared Forms I-212 and GI-166 belonging to the Petitioner, which were later used by the Petitioner, which basically refers to alien smuggling. And he responds, it would be hard to remember if they were. I'm sure they probably were not told in great detail what the consequences would be. I myself did not know what the consequences would be. But had they been placed in formal proceedings under Section 238 or 240 of the Act? They had not been placed in proceedings as yet. So why did they – why were they entitled to advice? Well, Your Honor, because I think the history of Section 287.3 leads us to believe that advice should be given during any custodial interrogation. I see. Okay. And that's where I'm going with this, Your Honor. I think because of the importance and the gravity of the situation, because technically the Petitioner, her husband, and the passenger faced – would eventually – could have faced criminal prosecution. So you're saying even though the regulation refers to placed in formal proceedings as a precondition to the triggering of the obligation to give rights, because of the spirit of the regulation, we should read it more broadly. Is that the argument? That is the argument, Your Honor. And as the Court has expressed in prior decisions, they do make a distinction – there has been made a distinction between the current 287.3 and what used to be the prior 287.3 enacted in 1977. And the only difference between the two, the current one and the prior one, is and placed in removal proceedings. And I think that statement itself has been, I think, overly expressed and overly taken to mean that not until the person is formally charged and issued an NTA and summoned to court that these advisals come into effect. How is that – how are we affected by our Court's decision in Somoya Martinez? It seems to me it's already answered the argument you're trying to present to us. Your Honor, with all due respect, I don't believe that decision was the correct decision. But that doesn't help you in front of us. I understand. I think because in the Somoya decision, Martinez decision, the timing wasn't quite definite. In other words, it leads the Court to – the Court basically said that, yes, advisals are to be given after removal proceedings, but when is it after? Well, wait. You don't – you don't argue that formal proceedings have begun here, and that's the line the case draws. And it says that's when the requirement kicks in. Before then, there's no such requirement. The holding in that case or the result of the case was that the statements could properly be used. How does that not bind us in this case? What's different about this case that falls on the side of what you think is the right side of the line drawn by that decision? Well, I think the facts of the case are somewhat different, Your Honor, because we have a petitioner who was at the El Centro airport assisting somebody to purchase a ticket. And an officer was dispatched to the airport. The petitioner, along with her husband and the passenger, were extracted from the airport, taken to a field office, questioned for three hours. And only after the officer had prepared these forms then did he make a determination to submit those forms to another unit so that that unit could proceed with formal proceedings and file the NTA and start the process. So I think the scenario in our case is very grave because the consequences of her being criminally prosecuted, I think, are very serious. So I make the argument that this case very much is very similar to a Cristolo interrogation where a person is extracted from the street or from a public area and the person is being questioned, the person is being, is being in a custodial format, but yet no rights are being read to the individual. So I think in this case the due process violations do exist because of the gravity of the situation. I understood the case, and I confess we have a lot of cases and sometimes they get mixed up. But as I recall, Samoya, the person had actually been arrested for something else and was handcuffed at the time he starts talking to the border patrol officer, I think, on the telephone. You could make out the same argument you've just made for your client on those facts. How is your client's condition more extreme than that? Well, in the Samoya case, Your Honor, the individual was made an infraction of some sort. The officer, who was not even an INS officer or an immigration officer, as I recall, it was a military police officer approached them and asked them for IDs and asked them to identify whether they were here legally. And it was after that that another, he contacted by phone an INS officer who basically interrogated them at that stage. So I think in Samoya, the issue, or at least one of the important issues, was whether or not the police officer had even the right to question their legal status. I think our case is a bit different because, first of all, we don't know the facts. We don't know what happened prior to the individual being extracted from the airport. We don't know whether there was, in fact, any reasonable suspicion to even detain them and question them. But yet, nonetheless, the officer took it upon himself to take them out of the airport, to question them extensively, and to get all the information necessary from them as possible. I believe that if at least, at least they would have been notified of their rights of the right to have counsel, of the right to know what they were being arrested for, and that the statement would be used at a later proceeding, then at least they would make the decision, okay, fine, I'll talk to you, or please let me see if I can contact a family member so I can have an attorney present or an attorney call or fax over his Form G-28, something so that the person at least has those options. They didn't have any options here. The officer took it upon himself to interrogate him for three hours to create these forms, and once he was satisfied he had gotten everything from them, he presented it to a prosecution unit and had the prosecution determine whether to file criminal charges or to file immigration charges under Section 240. So I think that's the main distinction here because of the gravity of the situation and clearly the due process violations that existed throughout the whole procedure. Do you want to say the balance of your time for rebuttal? Yes, Your Honor. Thank you. Welcome back. Thank you. Again, for the record, my name is Andrew Oliveira. On behalf of the Respondent, the Attorney General, Eric H. Holder. I'd like to just dive right into the Samoya-Martinez case, which controls the due process claim, the alleged due process violation. There is no right to counsel in immigration proceedings prior to the start of formal removal proceedings. That's what the regulation says. This Court was presented with a factual scenario that is almost identical to the one that we have here. And the Court presented that scenario at hand and concluded that the I-213 was admissible because there is no right to counsel during an interrogation by an immigration officer. And the fact that counsel raises the idea of a criminal prosecution is ultimately irrelevant. If there had been a criminal prosecution, would the conditions in which he was held qualify as custody? I'd have to look into that. But I believe the ---- So you're not arguing that they wouldn't qualify as custody in the criminal prosecution. You're saying the only thing we should look to is what's set up in the ---- Correct. We're not arguing whether or not these statements would be admissible in a criminal case because there was no criminal case. The only thing that's before this Court is whether or not the government met its burden to prove that Navarro-Figueroa was removable for alien smuggling. And this Court has held that the I-213s are, in fact, admissible because the formal right to an attorney does not attach until the initiation of formal removal proceedings. Now, that's an argument based on the regulations. Counsel for Petitioner appears to be making or trying to make as well a broader due process argument of some kind. Does Somoya speak to that? Somoya does address it because the general rule of the admission of evidence in removal proceedings is whether or not it is probative and fundamentally fair. And in Somoya-Martinez, the Court held the I-213 admission was fundamentally fair. This Court has repeatedly held that I-213s, because they're prepared in the ordinary course of immigration work, are trustworthy documents and inherently reliable. We suggested that if there were an issue of coercion or duress or something like that, it might be different, didn't we? Correct. But there's nothing here. Just the mere fact that someone is interrogated is not proof of coercion or duress. There is no evidence whatsoever of coercion, duress, or anything to suggest that the I-213 is infirm apart from the suggestion that they were not given notification of their right to counsel. However, there is no right to counsel until the initiation of formal removal proceedings. I'd like to briefly address the fact that the government did in fact meet its burden of proof. The I-213s of Navarro-Figueroa, her husband, and Perez all tell a consistent tale of meeting Perez in Tijuana and agreeing to transport her once she was inside the United States. That affirmative action is sufficient to constitute alien smuggling, as this Court has repeatedly stated. And if there are no further questions, we believe that the government did meet its burden of proof and the evidence in the record does not compel reversal. Thank you. Thank you. We'll have rebuttal. Thank you. Well, this Court has noted that the right to counsel doesn't come into effect until after proceedings have been filed. But I'd like to also point out that at least the person should have notice of a right to counsel. And that's the argument that I've been trying to make throughout my brief. So you want us to apply a Miranda warning kind of rule to this context? Yes, Your Honor, because surprisingly, these rights came into effect, I would say, about a year to two years after the Miranda warnings kicked in. And they're virtually identical. With only the exception is that the Miranda says, if you don't have an attorney present, if you can't afford an attorney, we can afford one or we can provide one for you. In immigration consequences, we know that the individual must or has the option to get an attorney at their own expense. So I think, yes, these rights are very much similar to the Miranda rights, but at least this officer should have given this individual notice of that option. Another thing that the government counsel brought up is that her statements in the I-213 were that she, in fact, admitted to it. Well, once again, it goes back to the fact, how is it that she was interrogated? We don't know to what extent. We just know that she was interrogated for three hours. And also during her own time. So you haven't made a separate argument about duress, have you? Your Honor, I haven't made it because I don't believe we know enough to make that argument, but potentially her client was in a position to know. I mean, she was there. So if she hasn't made the argument based on her own knowledge, I don't think we have the argument in front of us, do we? Your Honor, there is one statement that when she was asked in court on direct examination, the attorney asked her, so what exactly transpired, something of the effect? And she said, well, he kept yelling at me. He kept yelling at me to say, it's your sister, it's your sister. So, yes, we can make the argument that there's potentially, there was some duress, especially when she was questioned for three hours, separated from her husband and not allowed to have any kind of contact with an attorney or be advised to have an attorney present. So, yes, there is that argument to be made. Thank you, Your Honor. We thank you. We thank both counsel for your helpful arguments. The case just argued is submitted.
judges: Cogan, Schroeder, Clifton